# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**Medve Energy Ventures LLC**       Case No. 6:17-cv-01336

**Versus**                          Unassigned District Judge

**Warhorse Oil & Gas LLC et al**    Magistrate Judge Carol B Whitehurst

## ORDER

Before the Court is A Motion To Dismiss filed by Defendants, Steven W. Kent II and Jana Kent ("the Kents") [Rec. Doc. 12]; a Memorandum In Opposition filed by Plaintiff, Medve Energy Ventures, LLC ("Medve") [Rec. Doc. 25]; and the Kent's Reply thereto [Rec. Doc. 32]. For the reasons that follow, the Court will deny the Motion as moot and allow Medve to file an amended Complaint in accordance with this order.

## I. Background

Plaintiff, Medve, filed this action against Warhorse Oil & Gas, LLC ("Warhorse")[1] and the Kents, individually, regarding certain mineral leases referred to as the Granier Prospect area in Cameron Parish, Louisiana. *R.1*. Generally,

---

[1] Warhorse filed a voluntary petition for relief under chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana on December 15, 2017. *R. 9, 9-1*. On June 15, 2018, the Bankruptcy Court entered the Parties' agreed-upon lift stay Order lifting the automatic stay as it applies to the Kents in their individual capacities. *R. 14*. Thus, the Court will consider the instant motion against only the Kents, individually.

Plaintiff alleges that Warhorse and Medve are working interest owners of the Granier Prospect leases, with Warhorse designated as the operator and Medve as a participant. *Id., ¶¶ 8-13*.

The Complaint alleges that on June 16, 2016, Medve signed a Participation Agreement with Cypress Drilling LLC ("Cypress") for the purchase of a 5% Before Pay-out working interest in the Granier Prospect, *attached as R. 1-2,* which incorporated by reference a Joint Operating Agreement ("JOA") naming Warhorse as the operator of the Granier Prospect dated March 15, 2016, *attached as R. 1-3*. *Id., ¶ 9*. In addition to the JOA naming Warhorse as Operator, Warhorse signed a Participation Agreement with Cypress identical to the one MEDVE subsequently signed, except that Warhorse purchased a 27.5% Before Pay-out working interest, *attached as R. 1-4*; *R. 1, ¶ 11*. Medve alleges that while Warhorse lacked experience in oil and gas exploration and development as well as any history as an operator, Cypress agreed to make Warhorse the operator "because Cypress needed to get the project fully subscribed before oil and gas leases started expiring." *Id., ¶ 12*. Medve alleges that it forwarded its first 5% working interest share of $135,750.00 directly to Warhorse, pursuant to the Authority for Expenditure, *attached as R. 1-5*. *Id., ¶ 15*.

The Complaint alleges that the Kents "own, are the officers of, and/or possess some other form of ownership interest in" Wildcat Drilling, LLC ("Wildcat"), which the Kents selected to drill the required well. *Id., ¶¶ 17, 18*. Medve alleges that after

drilling began, Warhorse issued a second round of three cash calls in order to pursue more drilling. *Id., ¶¶ 19-20.* Thereafter, Medve agreed to assume other non-operating working interest owners combined 65% interest resulting in Medve having 70% of the working interest. *Id., ¶¶ 20-21.* Medve alleges it later paid two more cash-calls totaling $402,710.00. *Id., ¶ 23.*

Medve alleges that Warhorse received $2,876,167.00 in funds as operator on the Project. *Id., ¶ 28.* Medve further alleges that Warhorse engaged in a pattern of paying itself before paying its subcontractors which resulted in $1,180,199.19 in oil well liens asserted against the Project, and the working interests of Medve, the only remaining investor. *Id., ¶ 30.* It contends that after subtracting the outstanding balance of $541,191.19 from the amount of funds contributed by the other non-operator working interest holders, Warhorse had a surplus of $2,334,975.81 to complete the Project. *Id., ¶ 31.*

Medve alleges that Warhorse became non-responsive to status updates on the well causing Medve to hire its own engineer to determine condition. *Id. ¶¶ 33-33.* The well was completed on October 22, 2016, however, Warhorse's vice president of exploration & development, Kenny Savoie, informed Medve that a number of mineral rights leases in the Project had lapsed by that date. *Id., ¶¶ 34, 36.* Because of the actions of Warhorse, Medve alleges it cannot recoup anything from its investment until the liens on the well's production have been satisfied. *Id., ¶ 37.*

Medve filed this suit against Warhorse and the Kents, individually, alleging six counts: (1) breach of contract, (2) fraud, (3) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), (4) conversion, (5) unjust enrichment and (6) specific performance. At issue before the Court is whether or not Medve has alleged plausible claims against the Kents.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009. But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Iqbal*, 129 S.Ct. at 1949–50. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other

4

words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

### III. Analysis

The Kents contend that the Complaint contains only minimal allegations naming them individually and is devoid of any material factual allegations against them in order to support any of the claims alleged by Medve. They move the Court to grant their motion to dismiss all of the claims made against them. The Kents assert that the total sum of the factual allegations stated in the Complaint concerning them are as follows:

1. The Kents are allegedly "officers" of Warhorse and Louisiana citizens. *R. 1, ¶¶ 3, 18*;

2. The Kents are allegedly officers of, or own interests in, other businesses who are not parties to this litigation. *Id., ¶ 17*;

3. Warhorse, through its officers, the Kents, allegedly selected one of those businesses, Wildcat Drilling, LLC, to perform spudding and drilling of the well in the Granier Prospect. *Id., ¶¶ 18, 24(a)*;

4. Other creditors have allegedly filed other lawsuits against the Kents and/or their businesses. *Id., ¶¶ 38, 52*; and

5

5. Steven Kent allegedly personally guaranteed debts alleged owed to contractors who are not parties to this litigation. *Id., ¶ 51(d).*

*R. 12.*

Medve argues that its Complaint is "replete" with specific allegations to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the claims for fraud, violations of LUTPA and conversion attributable to the Kents. Medve further argues that it alleges a viable cause of action for breach of contract against the Kents under either a theory of veil-piercing, fraud and/or the alter-ego doctrine. Additionally, Medve asserts it has alleged claims of unjust enrichment under a veil-piercing theory, and specific performance under the alter-ego theory against the Kents individually.

*1. Documents Outside the Complaint*

In its Opposition, Medve refers to documents that were not attached to the Complaint. *See R. 25-1─25-11*. The exhibits consist generally of documents related to the bankruptcy of Crown Drilling, Inc. and Warhorse Drilling Acquisitions II, LLC, two companies owned by the Kents but unrelated to this action. Also, Medve cites the Complaint which reference the bankruptcies. *R. 1, ¶ 38(a), ¶ 52(ii).* In addition Medve attaches an Operating Agreement of Warhorse dated June 2, 2014 and a February 29, 2016 Promissory Note in which Warhorse is the borrower.

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d

6

333, 338 (5th Cir. 2008). However, the court may also consider documents outside of the pleadings if they fall within certain limited categories. First, the "court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' "*Id*. Second, the "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.' " *Sullivan v. Leor Energy*, LLC, 600 F.3d 542, 546 (5th Cir. 2010). Third, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994; *see also, e.g., Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011).

Considering the aforesaid jurisprudence and the record of this action, the Court takes judicial notice of the bankruptcy records referenced in the Complaint as "matters of public record." As to the Operating Agreement[2] and the Promissory Note, however, Medve has failed to show that these documents are public records and/or referenced in the Complaint.

2. *Fraud Claims*

Under Louisiana law, fraud is a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss

---

[2] Medve contends that the Operating Agreement was entered into the record of Warhorse's bankruptcy proceedings when opposing the Kents' Motion for Relief from the Automatic Stay. However, it provides no such proof of this contention. Also, because there is no indication that the Operating Agreement was recorded the public records doctrine is inapplicable. La R. S. § 31:216.

or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code art. 1953; *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc*., 178 F.Supp.3d 390, 401 (E.D. La. 2016). The requisite elements of a fraud claim are: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Id*. (quoting *Williams v. WMX Techs*., 112 F.3d 175, 177 (5th Cir. 1997)). Federal Rule of Civil Procedure 9(b) requires that "all claims of fraud be pled with particularity, including 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id*. (quoting *Tel–Phonic Services, Inc. v. TBS International, Inc*., 975 F.2d 1134, 1138 (5th Cir. 1992)). Thus, to sufficiently plead fraud, the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 178. A plaintiff may plead fraud based upon information and belief, as long their Complaint "set(s) forth a factual basis for such belief." *Id*. However, this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994). Further, "fraud by omission or silence is by its very nature difficult to plead with particularity. Because it does not involve an affirmative misrepresentation, it often does not occur at a

specific place or precise time, or involve specific persons." *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 401 (E.D. La. 2016) (citing *Greene v. Gulf Coast Bank*, 593 So. 2d 630 (La. 1992)).

The Kents contend that the Complaint contains no allegations of any representations made by either of the Kent's to Medve, much less any misrepresentations. Nor does it contains any allegations which would indicate that the Kents owed any duty to speak to Medve. They note that while the Complaint alleges that "Defendants misrepresented numerous material facts … through explicit statements and their conscious silences" there are no factual allegations to support these conclusory statements. *R. 1, ¶ 50*.

Medve states generally that its "Complaint is premised upon various forms of fraud committed by the individual Defendants by and through co-Defendant Warhorse. *R. 25*. The Complaint alleges that the members and officers of Warhorse are Steven W. Kent II, officer, and Jana S. Kent, officer and registered agent. Medve asserts in its Opposition that the Kents controlled the finances and business direction of Warhorse. In support of this statement, it cites the various bankruptcy documents in which the Kents signed as the member/managers of Warhorse, *R. 25-2─25-5, 25-7─25-11,* along with the allegations in the Complaint which Medve states alleges "the actions of Warhorse were directed by, and undertaken at the behest of, the Kents" *R. 1, ¶¶ 17, 18, 38, 38(c) & (d), 49, 52, 58, and 59.*

Louisiana law considers a limited liability company and its members as being wholly separate persons. See La. Civ. Code art. 24; *Ogea v. Merritt*, 130 So.3d 888, 894–95 (La.2013). Subject to certain statutory exceptions, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company. See La. R.S. 12:1320B. To that end, the legislature established narrowly defined circumstances under which individual members of a limited liability company may be subject to personal liability. *Nunez v. Pinnacle Homes, L.L.C*, 180 So.3d 285, 288 (La 2015).

The "narrowly defined circumstances" in which a member of a limited liability company may be held personally liable are set forth in Louisiana Revised Statute 12:1320(D), which provides:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company **because of any fraud practiced upon him**, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

Under this provision, the limitation of liability normally afforded a member of a limited liability company does not apply if the member (1) engages in fraud, (2) commits a negligent or wrongful act, or (3) breaches a professional duty. *See Ogea*, 130 So.3d at 897. Medve alleges that the Kent's committed fraud.

Medve asserts that the following allegations provide plausible claims of fraud attributable to the Kents, individually[3]

- Defendants misrepresented that money remitted in connection with work for the Granier Well would be spent thereupon. *R. 1, ¶ 50(a)*; *R. 1-5. Exh. 4; R. 1-12, Exh. 11*;

- Defendants misrepresented that they would take Plaintiff's investor funds and use them to timely pay the sub-contractors working on the Granier. *R. 1, ¶50(b), ¶54; R. 1-12, Exh. 11*;

- Defendants misrepresented they would not charge inflated prices for services procured under the auspices of their other Oil & Gas industry businesses. *R. 1, ¶50*;

- Defendants' intended to defraud Plaintiff as demonstrated by the Defendants' continuing to issue cash-calls in connection with the Granier while remaining silent about mounting sub-contractor non-payment. *R. 1, ¶51(b)*;

- Defendants' intended to defraud Plaintiff as demonstrated by the Defendants' issuing a third cash-call to fund the final aspects of completing the well in October of 2016 and leaving it uncompleted as of the time of filing suit, almost a year later; *R. 1, ¶51 (c); Exh. 6, Sept. 2017 Inspection Rpt.*;

- Defendants' intended to defraud Plaintiff as demonstrated by Defendant Steven Kent's giving a personal guaranty for work to a sub-contractor Defendants already owed significant sums to in order to get them to provide further work on the Granier, and then refusing to pay when they invoked the personal guaranty they were given. *R. 1, ¶51(d)*;

- Defendants' intended to defraud Plaintiff as shown by the Defendants' failure to pay various sub-contractors in connection with work they performed on other Warhorse wells. *R.1, ¶ 52(i)&(ii)*;

---

[3] The Court will not consider the Operating Agreement attached to Medve's motion, *R. 26-1*, therefore the allegation that "Defendants Steven and Jana Kent controlled all the financial and business decisions of Warhorse" must be excluded.

- Defendants' consciously fabricated the outward image that Warhorse was commercially sound at the time the AFE's were issued and thus induced Plaintiff to pay for three separate rounds of cash-calls on the basis of this consciously fabricated—but demonstrably false–image that Warhorse was commercially sound at the time the AFE's were issued, and payment was made. *R. 1, ¶ 54(a)-(c)*.

Medve contends that because individual members of a limited liability, such as the Kents, can be held liable for the wrongdoings of the organization in instances of fraud, Medve's "allegations of fraud against the organization are tantamount to allegations of fraud against individual LLC members." *R. 25, p. 10*. Thus, Medve argues, its allegations as to Warhorse should be construed against the Kents. In support of its argument Medve cites *Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.*, 97 So.3d 595, 598, (La.App. 1 Cir.,2012). There, the plaintiff, Charming Charlie, Inc., sued Perkins Rowe Associates, LLC and its managing member, Joseph T. Spinosa, based on a failed lease agreement. The plaintiff alleged that Spinosa was personally liable for Perkin's default under the lease even though he signed the lease in his capacity as Perkins' authorized agent and managing member. The plaintiff contended that Spinosa was the alter ego of Perkins and that he had fraudulently induced the plaintiff to enter into the lease. The court considered the allegations specifically related to Spinosa—that Spinosa knew or should have known that Perkins did not have the financial resources to enter into the lease and that Spinosa fraudulently induced the plaintiff to enter into the lease. The court found that the petition did not state a cause of action against Spinosa individually because

the allegations as to his liability were "merely conclusory in nature and [] not based upon specific facts relevant to a determination of the alter ego doctrine." *Charming Charlie* at 599. The court was clear that a plaintiff may not sustain a claim against an individual defendant merely by alleging that the individual "has a significant ownership interest" in the LLC or "is its managing member":

> There are no allegations that Spinosa commingled Perkins' assets with those of its members, failed to maintain separate bank accounts and bookkeeping records for Perkins, or otherwise failed to follow statutory formalities for the formation of Perkins or the conduct of its affairs. In fact, other than the fact that Spinosa is the managing member of Perkins and has a significant ownership interest therein**,** Charming Charlie alleges no specific facts supporting its bare assertions that Spinosa was Perkins' alter ego and all his decisions regarding it were personal decisions. The fact that a person is the managing member of a limited liability company and/or has a significant ownership interest therein does not in itself make that person liable for its debts. See La. R.S. 12:1320(B)

*Id.*

Here, as in *Charming Charlie*, the Court finds that Medve's allegations as to Steven and Jana Kent are conclusory and wholly without specific facts as to their ***personal*** involvement in Warhorse. The allegations in which Medve's Complaint actually names the Kents, individually, include that they "committed various acts of fraud" and made "material misrepresentations with the conscious intent to deceive … that occurred before or during the events that are the subject of suit." *R. ¶¶ 49, 52*. The Complaint then refers loosely to "defendants" with regard to allegations of such fraud or misrepresentation. The fact Medve filed a 26-page complaint, but

13

found it necessary to refer the Court to over one hundred pages of attachments in support of its motion against the Kents is telling as to the lack of specificity in the allegations. In determining this motion the Court is less concerned with the Kents' business acuity or whether or not the Kents were successful business owners[4] than whether or not Medve has alleged a plausible claim of fraud against either Steven Kent and or Jana Kent, personally, in this case.

Additionally, Medve's claim in its opposition that Warhorse is the alter ego of the Kents does not suffice to support its claims against the Kents, individually. Significantly, Count VI referred to by Medve is a claim for "Specific Performance" as to Warhorse and makes no allegation of an alter ego claim under Louisiana law. Even construing Count VI as an alter ego claim against the Kents, the allegations in the Complaint fail to address the factors in considering whether an adequate claim exists under the alter ego doctrine to pierce the corporate veil required in *Riggins v. Dixie Shoring Company, Inc.*, 590 So.2d 1164, 1168-69 (La. 1991).[5]

In addition to the foregoing, Medve contends that the allegations of fraudulent conduct committed by Steve and Jana Kent, give rise to causes of action against

---

[4] The Court notes that its review of the March 23, 2027 transcript from Steven Kent's interview with the Trustee in the Chapter 11 Bankruptcy of Crown Drilling Inc. indicates that Steven Kent had little personal knowledge of his businesses. *R. 25-8.*

[5] "The Louisiana Supreme Court has delineated several factors relevant to an alter ego analysis:1)commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. *Aker Solutions, Inc. v. Shamrock Energy Solutions, LLC*, 2016 WL 4529828, at *3 (E.D.La., 2016).

them for common-law fraud, Louisiana Unfair Trade Practices Act ("LUTPA") and conversion. As to its breach of contract claim and unjust enrichment claim, Medve contends that the Complaint describes a pattern of fraudulent misrepresentation regarding the cash calls which were allegedly used for "improper purposes." Additionally, it asserts that application of the "totality of the circumstances" supports its breach of contract claim. None of these allegations, however, contain specific allegations as to the Kents. As all of Medve's claims rely in whole or in part on the allegations of fraud by Steven and Jana Kent, the Court will grant Medve's alternative request to amend its Complaint, *R. 25, p. 15*, and allow it to state specific allegations related to its claims against Steven and Jana Kent in compliance with the general Rule 8(a) federal pleading standard and the heightened pleading standard under Rule 9(b). Accordingly,

**IT IS ORDERED** that the Motion to Dismiss filed by Defendants, Steven W. Kent II and Jana Kent [Rec. Doc. 12] is **DENIED WITHOUT PREJUDICE** and Medve is granted leave of Court to file an amended complaint in compliance with the Court's order within twenty-one (21) days of the date of the entry of this order.

**IT IS FURTHER ORDERED** that Defendants may re-urge their motion to dismiss after review of Medve's amended complaint, if they deem necessary or

appropriate.

**THUS DONE AND SIGNED** in Lafayette, Louisiana this 27th day of August, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE